United States v. Shah. Bring in the lawyers. Good morning. Mr. Kish. Good morning, Judge. Will you please speak with us? May it be so. My name is Paul Kish. I represent the appellant, Dr. Alap Shah, in this case involving the anti-kickback statute where we have questions about the propriety of a jury instruction and, if that instruction was erroneous, whether or not the error harmed the defendant, the appellant in the case. This was my very first anti-kickback act case, although this is all I do are federal criminal cases. I'd never read the statute before. I knew that there was this issue. I read the statute, and I literally had to walk around the office and read it again because I don't see the words about one purpose, any purpose, purpose at all written in the statute. Looking more closely at the structure of the statute, we've got in B1, the subsection, that's the payee part. B2 is the payor. B3 is the safe harbor. But for all of these, it's the general structure that we find in any federal fraud, kickback, you know, bribe statute. You've got somebody who's with money, somebody who does something, and then the thing between them is the money. The thing that's different here is in the payee portion, which is what we're under, the words connecting the recipient and the giver are the words in return for, while in the payor section, which is B2, the connection between the recipient and the payor is to induce. So I started thinking, what is the difference between that language? Well, induce, there's been some cases in this court, you know, induce kind of means persuade. That makes some sense. In return for, though, to me seems like a quid pro quo, because of. In other words, not a reason, the reason. In other words, the idea that you can take one reason out of 100 and convict a defendant under B1, to me, is the antithesis of the words that Congress chose. It seems to me the problem you have is that both the government's assumption that's reflected in the jury instruction given and your alternate idea of how the instruction should have been given are both premised on an assumption that is not based in the text of the statute. And that is that there has to be some purpose in mind on the part of the payee when in return for is only speaking about the nature of the payment. That is just what you said a moment ago, that this is a quid pro quo. In this instance, writing prescriptions in return and then accepting payments in return for that, that are kickbacks. None of that, it seems to me, says anything. Nothing in the statute that you've just been talking about says anything about the defendant's mental purpose. I agree with you 100%. And I started thinking… Then it seems to me that you lose. I disagree, because the question I believe that we have today in this case is whether or not the jury was improperly instructed. Yeah, but the problem is this, that the way the jury was instructed required the government to prove more than the statute actually required. I don't see how it harmed your client to tell the jury that there had to be this purpose when what you wanted is it had to be the entire purpose, the only purpose. Would you agree with me the instruction that you wanted would have been wrong too? The primary… Yeah, in rethinking that, I think that's right. I thought about it more. I have to admit it's an all or nothing. I don't think the purpose should anywhere be told to the jury. And you know what? We never do this in any other federal criminal case, do we? For example, in the felon in possession, the guy always wants to say the reason I had the gun was we don't allow that. The lady who's carrying the cocaine in from Columbia, I only got it because I'm poor and we don't let her say that. We don't go to purpose except for this one case. Yeah, it's kind of like accepting a bribe by a public official, right? But here's why I… But how did it hurt your client? And again, we can talk about the evidence. The evidence, you know, Dr. Shah was crucified on cross-examination. He never backed down. He said, I didn't think I was committing a crime. Also, the guys who said he was committing a crime, they had reasons to lie. But here's the real reason why I think there's error. Look at what the lawyers did with the information. The government's opening statement, you know, we're always taught, give an opening part of an opening, tell them what you're going to tell them, tell them what you told them. Here's the first part of the government's opening statement. The real issue you're going to have to decide, the true issue, this is page 133. The most important issue is this, was one purpose, let me say it again. Was one purpose of the reason the pharmacy paid this defendant to get him to write prescriptions. End of the opening statement. The judge will instruct you at the law is the end of this case. At a bare minimum, you will know that at least one purpose, at least one purpose of the $55,000 in payment was to get him to write prescriptions. Didn't all of that ignore to your benefit rather than your detriment? Yes. I guess what I'm really, I'm raising the same question that Judge Pryor asked you. I think you're dead right that the instruction was wrong. Purpose isn't mentioned in the statute. It ought not to have been in the instruction. But having put it in the instruction, I come away with the sense of, so what? How did it hurt you if the government was required to prove more than the statute required? Because it's sort of like willfulness light. You know what? It doesn't matter because Dr. Shaw made it clear. Remember, the jury found him not guilty on account. So they had some questions here too. But Dr. Shaw said, I didn't think I was breaking the law. The government, the way they argued the case in opening and in closing was, well, it almost doesn't matter if any one reason of why he did what he did was to get the money, then he's guilty. And it sort of reduces the government's burden. And here's the other thing to remember about who was harmed. Who's asking for this instruction? It's not the defendant. This is definitely not something that narrowed the government's obligation, I would suggest. Instead, this expanded the waterfront. That's a convenient way of looking at things, Mr. Kish, because at trial, you took exactly the opposite position. You thought that it was, in fact, broadening the government's ability to convict because you wanted an even narrower instruction that it had to be the entire or complete purpose, right? Actually, that's not quite accurate, Judge, as to what happened at trial. I was not trial counsel, but trial counsel simply objected to the government's instruction. Trial counsel did not propose an alternative purpose-driven instruction. But in making the argument about why the government's instruction was wrong, wasn't that the argument? No, the argument was simply that it wasn't supported by the case law in the 11th Circuit at the time. So, again, I think it's telling that the government wants this instruction. It's also telling, in our case, that the amicus briefs, I think, are worthy of consideration because this is not something that the defense bar is asking for, and certainly not the healthcare industry. They are highly concerned about this. A way to think about this is, as I said, the structure of the statute is payor, payee, and then safe harbor. If you accept the government's idea, the safe harbors become irrelevant. If any one purpose for an actor in the healthcare industry is to somehow receive or pay or induce the payment of remunerations or money… Because, again, everybody's making the assumption that the correct instruction would be one that you now agree would be an erroneous instruction, too. Right, but the point that we have in our case today is that we have the jury is told something that has no impact on their decision. And the government exploits that by making it their theory of prosecution. No, it doesn't have any – it's not that it has no impact on their decision. It requires the government to prove more than the statute requires. And if we assume that juries follow instructions, then they actually require the government to do more. The jury was nevertheless instructed that there had to be a kickback and that it had to be knowingly accepted. Isn't that right? And they had to – correct, and willfulness, too. They were told about willfulness. Yes, sir. Yes, so insofar as there was an additional part of the instruction about the defendant's purpose, that's not grounded in what the statute requires. But everything that the statute requires was part of the instruction, plus there was this additional element that the statute doesn't require. So if the jury took that seriously, which we assume it did, then it actually required the government to prove more than the statute required. With all due respect, I disagree with you, Judge. I believe that the entire premise of focusing on one purpose out of many was to reduce the jury's need to find willfulness. I simply have to disagree with that characterization, Your Honor. Coming back to whether or not there was harm, though, again, as I said, the defendant clearly testified he didn't believe he had done anything wrong despite the messages he explained all of them. The main witnesses against him had every reason to lie, and the hand case we cite mentions that even if there's sufficient evidence to convict, that's a different analysis than when we're looking at error. We have to look at the record as a whole, whether people have a reason to lie, whether the evidence is inequipoise, whether the jury reached a compromise or, you know, two-sided verdict. I see my time is almost up. I have reserved a few minutes for more argument. Thank you, Mr. Kish. Mr. Dionne, you'll need to unmute yourself. Good morning, Honors. May it please the Court. Scott Dionne on behalf of the United States. I'd like to start by just making one clarification, and I think the Court is on to something here in terms of the way the jury instruction was worded, but I'd like to clarify that. On to something, or do you want to make the same concession that you're opposing, Counsel, which is that it was wrong, wasn't it? It's erroneous. That would be correct, Your Honor. The wording of the jury instruction was wrong, but the harm that the defendant suffered as a result of this was slim to none. Well, actually none, because the government's burden was raised as a result of this erroneous instruction. But the point that I'd like to clarify is that in the Payor case, the defendant's motivation does matter. Yeah, to induce does speak to the motivation. Correct. So the way that the government sees the jury instruction should be worded is that the payment was made with the intent to induce, and it's a fine distinction, but it's a notable one. And I think the Court is exactly right that the defendant's motivation does not matter in that determination. The government has to put forth proof of the Payor's motivation in either case. It must prove that the payee willfully received the remuneration in return for writing prescriptions, and that specifically at least one purpose of the remuneration, at least one purpose of the payment, was for writing prescriptions. And that, putting it in the passive, actually requires the government to prove that the Payor was motivated to induce the payee. So that's really the distinction here. Mr. Dionne, could the jury have misapprehended what they had to find about the defendant's state of mind because the whole focus was on purpose, when purpose really was a red herring? It had nothing to do with what the government did have to prove beyond a reasonable doubt. Could they have labored under a misapprehension, they just focused on purpose, one purpose, more than one purpose, et cetera, rather than focusing on intent? The answer to that is no, Your Honor, and the first reason would be, again, as defense counsel pointed out, the jury instructions laid out the willfulness element. It laid out the good faith defense, so the jury well knew that willfulness was still a requirement to convict Defendant Shah. Second, I'll point out that in closing argument, the defense counsel actually centered his entire argument on the willfulness element. He said the issue is when Dr. Shah entered into this agreement with PGRX, did he believe that he was violating the law? Did he act with any intent, with bad intent, with bad purpose to violate the law? That's the key. So defense counsel made clear that willfulness was the key here, and defense, in fact, their entire closing argument was a good faith defense. So to the extent that the jury was instructed on one purpose, I don't think there was any confusion about their responsibility, not just to find, and of course it was error, not just to find that one purpose of the defendant's motivation was, or one purpose of the defendant's motivation was to write prescriptions, but also that the defendant willfully did so. And the willfulness there is key, and I think that's what really reigns it in here. So yes, to the extent that the jury, I'm sorry, the answer to your question is no. To the extent that the jury was instructed on one purpose, they absolutely knew that willfulness was an important element here. It was highlighted in defense counsel's closing, and it was also highlighted in the government's closing. It appears that the panel has no further questions. I don't have any. Judge Hull, Judge Marcus, do you have any? I have none, thank you. So I'll just briefly close with the government believes, again, and agrees with Chief Judge Pryor and the panel that there was minor error here in the jury instruction, but that to the extent there was an error, it actually raised the government's burden. It's not that it was minor error. Your argument, as I understand it, is that there was an error, but it was harmless. Correct. And it was harmless to the defendant because it raised the government's burden, as opposed to lowering it. Thank you for your time this morning. Thank you, Mr. Dion. Mr. Kish, you've saved four minutes for rebuttal. And I ask Mr. Dion to mute himself again because we're getting feedback from him. Thank you, Judge. As I understand the government's position, they asked for an instruction that they now concede was error, but they say that it was a harmless error. In support of that position, the United States says and points to defense counsel's closing argument, focusing on whether or not there was adequate proof of willfulness and whether the defendant acted in good faith. And the government says, therefore, that somehow shows us that the error was harmless. Again, I think it's worth looking at how the government argued the case. They always pointed to, and there are seven places in the record that are cited in our brief, in our reply brief, seven times the prosecutor representing the United States pointed out how you can find the defendant guilty if you find one purpose. Here's my problem with this argument, Mr. Kish. Wasn't the government's theory that the reason your client was writing these scripts was to get kickbacks? Yes. And that's what the purpose was, right? That was their position, yes. And not that it was to feed a gambling habit or to help a sick child or any other kind of purpose that would have been even more far afield from what the focus should be. But insofar as the defendant knowingly and willingly accepts a kickback in return for writing prescriptions, all of which the jury has instructed the government has to prove, and the government adds to that, and the district court instructs the jury in addition to that, that that's what the defendant's purpose was, was to write those prescriptions so as to receive those kickbacks. Isn't that just adding to what the statute only requires and not a way that really distracts it? It just increases the government's burden? I disagree for several reasons. First, remember, this is a case where the United States conceded that all of the prescriptions were medically necessary. So we've got that purpose out of the way. It's not that he's trying to jack up income because these are all absolutely necessary prescriptions. Second, when the defense is arguing, focusing solely and completely on the state of mind and the government's comeback to that argument is one purpose, that doesn't increase the government's burden. It reduces it. Otherwise, why would they be arguing that in response to the defense claim of no intent to break the law? I understand we probably just look at it differently, but I think that's the only logical way to look at it. Look who benefits. Who benefits from the instruction? Certainly not the defense. Why is the government asking for it and then backing off and saying, oh, it's no longer the law, no harm, no foul? They only ask for it in order to increase their— The government does not have to prove that the defendant's sole purpose in soliciting blah, blah, blah. Suppose he had not said anything at all about that. Would the instruction on the state of mind otherwise have been sufficient? Yes. How does this reduce or undermine the efficacy of the instruction on willfulness, which, after all, requires that the defendant act with a bad purpose to willfully disobey or disregard the law? How does the addition of this paragraph somehow amount to subtraction from what he had said about the state of mind and the willful requirement? The answer is at pages 133 and 144, when the government, when arguing its case to the jury, said, let me say it again. The most important issue was one purpose of the reason. They're focusing on the one purpose language because it reduces their guilt, their obligation, in my opinion. So it wasn't the instruction. It was the argument of counsel that somehow would have misled the jury. It's the exploitation of the one purpose instruction by the government trial. My time is up. Thank you very much. Thank you, Mr. Tish. We appreciate it and have your case.